2001 UT 83

**SALT LAKE TRIBUNE PUBLISHING CO., L.L.C., a Utah limited liability company, Petitioner,**

v.

**The Honorable Jon M. MEMMOTT, Respondent.**

**Deseret News Publishing Company, a Utah corporation; and Kearns–Tribune, L.L.C., a Delaware limited liability company, Real Parties in Interest.**

No. 20010635.

Supreme Court of Utah.

Sept. 26, 2001.

James S. Lowrie, Anthony L. Rampton, Deno G. Himonas, Bruce Wycoff, Salt Lake City, for petitioner.

Brent M. Johnson, Salt Lake City, for respondent.

David Jordan, Jill M. Pohlman, Salt Lake City, for Deseret News Publishing Co.

Jonathan A. Dibble, James S. Jardine, Salt Lake City, for Kearns–Tribune.

### ORDER ON PETITION FOR EXTRAORDINARY WRIT

RUSSON, Associate Chief Justice:

¶ 1 This petition concerns an ongoing dispute between the two major daily newspapers in Salt Lake City: the *Deseret News* and *The Salt Lake Tribune.* The *Deseret News* is published by Deseret News Publishing Corporation ("DNPC"). *The Salt Lake Tribune* is published by Kearns–Tribune, L.L.C. ("KTLLC"). Direct management responsibility for the Tribune, however, has been delegated to an independent entity, Salt Lake Tribune Publishing Corporation ("SLTPC").

¶ 2 SLTPC filed a prior action in federal court that involves many of the same facts and controversies. We will discuss that federal action only to the extent necessary to

frame the allegations raised here. In the separate state court action to which this petition pertains, DNPC has filed suit against both KTLLC and SLTPC, requesting a declaratory judgment as to the rights of each of the parties under certain contracts that will be discussed below. DNPC filed the state court action in the Second Judicial District Court in Davis County. SLTPC moved the court for change of venue to Salt Lake County. The motion was denied.

¶ 3 SLTPC petitions this court for an extraordinary writ in the form of mandamus directing Judge Jon M. Memmott to transfer venue of district court case number 010700147 from Davis County to Salt Lake County. The question of venue is the sole issue before us in the petition. We do not address the merits of the underlying suit. We grant the writ and direct transfer as requested. *See Angell v. Sixth Judicial Dist. Ct.,* 656 P.2d 405, 407 (Utah 1982) ("where it is clearly shown that the movant has a right to a change of venue, and the District Court has no sound legal discretion to refuse such a change," petition for extraordinary writ may be employed as remedy).

## BACKGROUND

¶ 4 SLTPC's motion for change of venue was interposed prior to the filing of any answer to the complaint. Judge Memmott nonetheless granted limited discovery on the facts relating to venue, creating a record in addition to the allegations in the complaint. We note the background of this case is exceedingly complicated. We here set forth only the limited facts necessary to a fundamental understanding of the venue issue presented to us. For the sources of those facts, we rely primarily on DNPC's complaint, *see Prows v. Pinpoint Retail Systems, Inc.,* 868 P.2d 809, 810 (Utah 1993) (reviewing motion to dismiss for improper venue under rule 12(b)(3) of the Rules of Civil Procedure),

supplemented where appropriate by the materials obtained through discovery.

¶ 5 The focus of the underlying dispute relates to contractual rights under a joint operating agreement ("JOA") between the publishers of the *Deseret News* and *The Salt Lake Tribune.* In 1952, DNPC and a predecessor in interest to KTLLC [1] entered into the JOA for the purpose of integrating the printing, marketing, sales, and distribution functions of the newspapers. In so doing, each publisher retained full and independent editorial control over its respective newspaper. Pursuant to the JOA, the Newspaper Agency Corporation ("NAC"), was created to execute the publishing, distribution, and marketing functions of both newspapers. The owners of *The Salt Lake Tribune* and *Deseret News* were to hold all assets of the NAC, including its stock. The JOA was amended in 1982. Among other provisions, the amended JOA included a prohibition on the sale of NAC's stock and set forth conditions under which the *Deseret News* could be distributed as a morning daily paper.

¶ 6 In 1997, KTLLC's predecessor merged with Telecommunications, Inc. Contemporaneously, a new entity, SLTPC, was created. Under a management agreement between KTLLC's predecessor and SLTPC, certain management duties were delegated to SLTPC. KTLLC's predecessor and SLTPC also executed an option agreement purporting to permit SLTPC to acquire the assets of KTLLC as of July 31, 2002. The option agreement included a promise by KTLLC's predecessor not to sell the assets of the Salt Lake Tribune prior to that same date.

¶ 7 KTLLC and SLTPC's interests have since diverged. It appears the primary source and manifestation of the current contention is DNPC's desire and intent to publish the *Deseret News* as a daily morning newspaper. Apparently, KTLLC has expressed a willingness to allow DNPC to publish the *Deseret News* in the morning field of

---

1. KTLLC's direct predecessor in interest was an entity known as Kearns–Tribune Corporation. Kearns–Tribune was created shortly after the 1952 Joint Operating Agreement. Although there may be certain distinctions between KTLLC and Kearns–Tribune that are relevant to the substantive claims in the underlying case, we

do not find those distinctions pertinent to our discussion here. All parties before this court identify KTLLC as the successor to all of Kearns–Tribune's rights and obligations. Therefore, to simplify the background as much as possible, we will refer to KTLLC's predecessor entities only in the generic sense.

publication, while SLTPC has expressed strong disapproval of that change. The reason for this divergence in opinion is not entirely clear from the pleadings before us, but a series of transactions relating to the ownership of KTLLC have apparently influenced or exacerbated the dispute. After the 1997 merger, AT & T acquired Telecommunications, Inc., and invited bids for KTLLC. In December 2000, SLTPC filed suit in federal court against AT & T. AT & T thereafter reached an agreement for transfer of its interests in KTLLC to MediaNews Group, and SLTPC amended its federal suit to name MediaNews Group as a defendant. In January 2001, KTLLC and DNPC approved several amendments to the JOA.

¶ 8 DNPC thus maintains that KTLLC retains its rights as the legitimate signatory to the JOA, and that SLTPC's alleged attempts to interfere with contractual rights under the JOA are a violation of SLTPC's role as an agent to KTLLC. The substance of DNPC's complaint is that SLTPC has conspired to prevent the *Deseret News* from competing with *The Salt Lake Tribune* in the morning field of distribution and, in so doing, has improperly interfered with DNPC's rights as a signatory to the JOA. DNPC also has asserted the option agreement is a clear violation of the JOA's proscription against alienation of NAC's stock. SLTPC, on the other hand, asserts in its petition to this court that "KTLLC is not accurately aligned in this action," and is effectively colluding with DNPC to "deprive SLTPC of its rights," under the management and option agreements.

### PROCEEDINGS BEFORE THE DISTRICT COURT

¶ 9 DNPC filed its complaint in the Second Judicial District Court, Davis County, naming both KTLLC and SLTPC as defendants. The case was assigned to Judge Jon M. Memmott. DNPC sought a declaratory judgment as to the meaning and enforceabili-

ty of the JOA and the management and option agreements between KTLLC and SLTPC. SLTPC moved for change of venue to the Third Judicial District Court, Salt Lake County. Judge Memmott allowed limited discovery related to the motion, including depositions, and conducted a hearing.

¶ 10 Two issues eventually dominated the discussion: First, a concern arose regarding the correct version of the statute DNPC cited as the basis for venue. DNPC relied on the published codification of section 78–13–4, which apparently allows a plaintiff suing on a written contract to file suit in the county where the contract was to be performed.[2] In 1990, section 78–13–4 was substantially amended. Among other changes, the 1990 legislature apparently voted to delete the provision allowing venue at the place of performance. The enrolled copy signed by the governor and the presiding officers of both houses of the legislature included the other amendments but retained the deleted language relating to place of performance. Thus, the parties addressed the question of whether the language DNPC cited as a basis for venue in Davis County remained valid. Judge Memmott, relying on article VII, section 8 of the Utah Constitution, concluded the 1990 amendments were unconstitutional because the enrolled copy signed by the governor and the presiding officers of the legislature did not indicate the deletion approved by the legislature. As a consequence, Judge Memmott applied the pre–1990 version of the statute. That version provided:

> When the defendant has contracted in writing to perform an obligation in a particular county of the state and resides in another county, an action on such contract obligation may be commenced and tried *in the county where such obligation is to be performed* or in which the defendant resides.

Utah Code Ann. § 78–13–4 (1987) (emphasis added).

---

**2.** Subsection 78–13–4(2), as it currently appears in the published Utah Code, provides:
   When the defendant has signed a contract in the state to perform an obligation, an action on the contract may be commenced and tried in the following venues:

   . . .
   (2) . . . in the county where *such obligation is to be performed*, the contract was signed, or in which the defendant resides.
   (Emphasis added.)

¶ 11 Second, the parties contested the issue of whether the nature of the contractual relationships amongst the parties supported DNPC's allegation that SLTPC had entered into a contract where the obligation was to be performed in Davis County. Judge Memmott reasoned SLTPC's assertion of rights to perform certain duties under the management agreement created contractual obligations to be performed in Davis County under the JOA's description of a "primary market area." In particular, Judge Memmott pointed to SLTPC's asserted rights of management of the NAC, which in turn distributes and markets both the *Deseret News* and *The Salt Lake Tribune* in southern Davis County. Accordingly, Judge Memmott denied the motion for transfer of venue. This petition followed.

## ANALYSIS

¶ 12 The two issues decided by Judge Memmott are renewed by SLTPC in its petition. Because we conclude the lack of a contractual relationship between DNPC and SLTPC determines the outcome, we do not address the question of the constitutionality of the 1990 amendments to section 78–13–4.

¶ 13 Much confusion in this case has resulted from the ambiguous nature of the relationship between SLTPC and KTLLC.

SLTPC was created by KTLLC's predecessor. The management agreement describes SLTPC as an independent contractor acting "solely as agent of [KTLLC]." Specifically, SLTPC is "the *exclusive management agent* to supervise and manage the publication and operation of [*The Salt Lake Tribune* ] and to render services related thereto, *subject to the direction and authority of [KTLLC]*." (Emphasis added.) SLTPC is further granted "the authority to act on behalf of [KTLLC] with respect to all action required or permitted to be taken by [KTLLC] under the Joint Operating Agreement." On the other hand, the management agreement specifically withholds any authority to "amend, alter, or modify the Joint Operating Agreement." On its face, then, the management agreement construes the relationship between KTLLC and SLTPC as one of principal-agent. As such, the management agreement delegates, but does not irrevocably assign, any rights under the JOA.[3]

¶ 14 DNPC concurs in this construction of the management agreement (although it maintains SLTPC is purporting to act beyond its authority as an agent). DNPC also affirms that it and KTLLC own all assets of the NAC as tenants in common, and that each owns equal shares of all of NAC's capital stock. Neither DNPC[4] nor SLTPC as-

---

3. On the other hand, the management agreement does assign *"sole* authority and discretion with respect to the news and editorial policies established and implemented by [*The Salt Lake Tribune* ]" (emphasis added), to SLTPC. As previously noted, the editorial and reporting functions of both newspapers have always been beyond the purview of the JOA.

4. In its complaint, DNPC alleged SLTPC is exploiting its status as "exclusive management agent" to "effectively substitute [itself as] a party to the Joint Operating Agreement." This, however, is DNPC's characterization of SLTPC's position in the federal lawsuit. It does not constitute an allegation by any party involved in this petition. DNPC steadfastly maintains that it and KTLLC are the only proper parties to the JOA. SLTPC formally denies that it is a party to the JOA, although its own characterization of the nature of its delegated powers is ambiguous to say the least. It is evident from the discovery in this case that SLTPC perceives itself as the tail that wags the dog. For instance, Dominic Welch, the principal executive officer of SLTPC, stated in his deposition that he believes KTLLC

has *no* authority to direct SLTPC's activities under the management agreement. Further, SLTPC made the statement in one document submitted to Judge Memmott that "[c]ounsel for SLTPC ... invited counsel for DNPC and for KTLLC to stipulate that SLTPC was the party to the [JOA] but got no takers."

Nonetheless, there is no substantial basis at this point for holding that SLTPC has been substituted as a party to the JOA. If DNPC's characterization of SLTPC's position in the federal lawsuit is correct, there remains the theoretical possibility that SLTPC is in fact a party to the JOA. That possibility would in turn provide a basis for venue in Davis County if Judge Memmott's application of section 78–13–4 is otherwise valid. However, the question of SLTPC's status under the management agreement is a critical substantive issue in both the federal suit and the present state court litigation. A threshold procedural issue of venue cannot be held prisoner to speculation concerning the substantive outcome of a case. *Cf. State v. Moore*, 111 Utah 458, 470, 183 P.2d 973, 978 (1947) ("The granting or denial of a motion for change of

serts that SLTPC is currently a party to the JOA, nor that SLTPC has any independent ownership interest in the NAC.[5] Further, DNPC is not a party to the management and option agreements between KTLLC and SLTPC. We conclude these facts are dispositive.[6] In substance, DNPC's claims against KTLLC are contractual, based on the written JOA. On the other hand, its claims against SLTPC are, in their essence, for tortious interference (via manipulation of the management and option agreements) with DNPC's rights under the JOA. *See Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 301–04 (Utah 1982). We are thus faced with the circumstance where DNPC has brought an action in contract against one defendant, and an action in tort against another.

■ ¶ 15 Considered independently, then, different venue provisions would apply to each defendant. Assuming Judge Memmott's analysis regarding section 78–13–4 is otherwise correct, DNPC could obtain venue over KTLLC in Davis County because the JOA between DNPC and KTLLC arguably requires performance in that location.[7] On the other hand, there is no written contract between DNPC and SLTPC, and section 78–13–4 is inapplicable to DNPC's action against

SLTPC. Instead, section 78–13–7 is the venue statute that would apply to DNPC's action against SLTPC. That section, in pertinent part, provides:

> In all other cases the action must be tried in the county in which the cause of action arises, or in the county in which any defendant resides at the commencement of the action; provided, that if any such defendant is a corporation, any county in which such corporation has its principal office or place of business shall be deemed the county in which such corporation resides within the meaning of this section.

Utah Code Ann. § 78–13–7 (1996). Because SLTPC's corporate "residence" is in Salt Lake County, section 78–13–7 would clearly place venue in Salt Lake County if SLTPC was the sole defendant.[8]

■ ¶ 16 In short, the "county where such obligation is to be performed" clause of the pre–1990 version of 78–13–4 arguably applies to DNPC's action against KTLLC, but the residency provision of section 78–13–7 clearly applies to DNPC's action against SLTPC. Since the statutes themselves do not articulate any basis for determining which provision ought to prevail in the event of a conflict,[9] we look to the underlying poli-

---

venue must be predicated upon conditions existing at the time such motion is heard.").

5. Apparently, the option agreement would transfer all of KTLLC's assets to SLTPC, and therefore effectively substitute SLTPC as a party to the JOA without DNPC's consent, but that option, even if valid, may not be exercised prior to July 31, 2002.

6. It is therefore unnecessary for us to address the other arguments presented by the parties.

7. KTLLC shares DNPC's interpretation of the validity and applicability of the pre–1990 version of section 78–13–4. Moreover, because venue may be waived, *see Dixie State Bank v. Johnston,* 714 P.2d 1159, 1160 (Utah 1986), KTLLC's consent to be sued in Davis County would suffice even if its interpretation of the statute is incorrect.

8. There has been little if any discussion regarding the applicability of the clause referring to the location of the "county in which the cause of action [arose]." Salt Lake County has been the focal point of the dispute because both newspapers are principally based in Salt Lake City.

Further, DNPC has made no serious effort to assert any basis for venue under section 78–13–7.

9. Rule 19(a) of the Utah Rules of Civil Procedure apparently envisions a rare circumstance where a party should be dismissed from an action rather than being compelled to submit to improper venue. However, the policies pertaining to venue differ significantly from those pertaining to jurisdiction. Accordingly, the venue statutes clearly envision circumstances in which plaintiffs are allowed to bring defendants into foreign venue locales (i.e., where venue would be improper if the defendants were sued individually). For instance, by the terms of section 78–13–7, plaintiffs are not required to find a location where *all* defendants in a multi-party lawsuit are subject to venue. That section explicitly allows venue in a "county in which *any* defendant resides." Utah Code Ann. § 78–13–7 (1996) (emphasis added). Also, under certain specified circumstances, section 78–13–9 provides for transfer of venue to counties where venue might otherwise be improper, if such is necessary for an impartial trial, the convenience of witnesses, or the ends of justice. In the present action, dismissal of one party would not be consonant with the ends of justice, nor consistent with the principles embodied in our venue statutes. It is apparent the

cies of those provisions. *See Nelson v. Salt Lake County*, 905 P.2d 872, 875 (Utah 1995). In regard to civil suits not respecting real property under section 78–13–1 of the Utah Code, the general venue rule is based on the residence of the defendant. As this court noted in the early case of *Buckle v. Ogden Furniture & Carpet Co.*:

> Requiring persons sued to defend legal actions at places remote from where they reside exposes them to an expense and disadvantage manifestly unjust, and to avoid such mischief the general modern tendency is to fix the venue of transitory actions at the residence of the defendant. By giving a sensible and effective meaning to all the provisions of the statute, and considering them together, the only rational conclusion is that the Legislature intended to establish the general right of persons sued to have the action tried in the county where one of them resides, and that the actions which may be tried elsewhere are limited and restricted to those which the statute itself excepts from the general rule.

61 Utah 559, 563–64, 216 P. 684, 685 (1923); *see also Simmons v. Hoyt*, 109 Utah 186, 189, 167 P.2d 27, 28 (1946). Following the assumption that the general rule for venue is the place of a defendant's residence and that other bases for venue are exceptions to that rule, this court has established a relatively restrictive reading of the contract venue provision "where such obligation is to be performed." [10] *See, e.g., Palfreyman v. True-*

*man,* 105 Utah 463, 466–67, 142 P.2d 677, 678–79 (1943); *Atlas Acceptance Corp. v. Pratt,* 85 Utah 352, 355–63, 39 P.2d 710, 711–14 (1935). Because the provision pertaining to performance of contractual obligations functions as an exception to the general rule for venue, we conclude the general rule ought to prevail in the unusual circumstance where differing venue provisions apply to multiple defendants.

¶ 17 We therefore look to those venue provisions based on residency. Under section 78–13–7, SLTPC's corporate "residence" is in Salt Lake County. It further appears KTLLC's residence under the residency prong of section 78–13–4 is in Salt Lake County.[11] In either case, the result is the same. Salt Lake County is the appropriate venue. We therefore grant SLTPC's petition and direct Judge Memmott to transfer venue over this case to the Third Judicial District Court in Salt Lake County.

¶ 18 Chief Justice HOWE, Justice DURHAM, Judge DAVIS, and Judge JACKSON concur in Associate Chief Justice Russon's opinion.

¶ 19 Having disqualified themselves, Justice Durrant and Justice Wilkins do not participate herein; Court of Appeals Judges James Z. Davis and Norman H. Jackson sat.

---

presence of all parties is essential to fair adjudication if the case is to be tried on the merits, and no party to this case has suggested that either defendant should be dismissed from the suit on the ground of improper venue.

10. Notably, section 78–13–4—in both its pre–1990 and post–1990 forms—provides that the place of the defendant's residence is one basis for venue. The more restrictive interpretation has focused on the provision for venue in the county "where such obligation is to be performed." In cases invoking this particular provision, we have held that a plaintiff has the right to bring the action in the county of the contract's performance only where "from the terms of the contract it is expressly or by necessary implication made to appear on the face thereof that the obligation" is to be performed in that county. *Floor v. Mitchell*, 86 Utah 203, 211, 41 P.2d 281, 284 (1935).

11. This is unclear. KTLLC's residence may be out of state. But even if such is the case, it is immaterial to our decision. Under that circumstance, DNPC might be entitled to rely on section 78–13–6, which provides as follows:

> All transitory causes of action arising without this state in favor of residents of this state shall, if action is brought thereon in this state, be brought and tried in the county where the plaintiff resides, or in the county where the principal defendant resides, or if the principal defendant is a corporation, then in the county where the plaintiff resides or in the county where such corporation has an office or place of business, subject, however, to a change of venue as provided by law.

DNPC's corporate residence is in Salt Lake County. Even assuming DNPC was entitled to rely on this section, the result would remain unchanged.