2014 UT App 294

## THE UTAH COURT OF APPEALS

RYAN MYERS AND MIKELL MYERS,
Plaintiffs and Appellants,
*v.*
UTAH TRANSIT AUTHORITY,
Defendant and Appellee.

Opinion
No. 20130098-CA
Filed December 18, 2014

Fourth District Court, Spanish Fork Department
The Honorable Donald J. Eyre Jr.
No. 110300720

Bruce M. Pritchett Jr., Attorney for Appellants

David F. Mull and Robert H. Hughes, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and STEPHEN L. ROTH
concurred.

CHRISTIANSEN, Judge:

¶1      Ryan and Mikell Myers were injured when a Utah Transit
Authority bus driver failed to stop at a red light while making a
right-hand turn. The UTA bus struck the Myerses' vehicle as it
passed through the intersection. Settlement negotiations between
the Myerses and UTA proved unsuccessful, and the Myerses filed
suit. The district court dismissed the Myerses' negligence
complaint, ruling that they had failed to timely file their complaint
after filing an initial notice of claim and that UTA was therefore
immune from suit under Utah's Governmental Immunity Act.

¶2     On appeal, the Myerses assert that in the course of negotiations, UTA had agreed to extend their time to file a notice of claim under the Act. They contend that they timely filed their complaint after filing a second notice of claim. They contend in the alternative that, due to their reliance on UTA's agreement to an extension, UTA was estopped from asserting that the complaint was untimely. Because we determine that UTA did not agree to extend the Myerses' time to file a notice of claim, we conclude that the district court correctly dismissed the Myerses' complaint.


BACKGROUND

¶3     This case arises under Utah's Governmental Immunity Act (the Act). Generally, before filing suit against a governmental entity, an injured party must first file a notice of claim with that entity within one year after the claim arises. Utah Code Ann. §§ 63G-7-401, -402 (LexisNexis 2008 & Supp. 2009). The entity may then approve or deny the claim within sixty days. *Id.* § 63G-7-403 (LexisNexis 2008). If the entity does not approve or deny the claim within the sixty-day period, the claim is deemed denied. *Id.* The claimant must then file suit within one year after the denial of the claim or the claim will be barred. *See id.*

¶4     The collision between the UTA bus and the Myerses' vehicle occurred on October 31, 2009. Shortly thereafter, the Myerses completed a Notice of Claim form that UTA provided them. On the form, the Myerses described the nature of their claim against UTA and the damages and injuries incurred as a result of the accident. The Myerses mailed this notice of claim to UTA on December 1, 2009. The Myerses then entered into settlement discussions with Michael Benvegnu, a UTA claims administrator.

¶5     In February 2010, Benvegnu requested that the Myerses provide an update on their medical recovery. After responding to Benvegnu's request, the Myerses asked, "[H]ow long do we have to settle?" and explained their understanding that "special rules"

applied to claims against UTA as a government agency. Benvegnu responded by email on February 26, 2010, referred the Myerses to the applicable provision of the Act governing their claim, Utah Code section 63G-7-403, and explained, "UTA received you[r] Notice of Claim on 12/2/09, so you would have until 12/3/10 to settle or file a lawsuit to maintain your claim." The Myerses responded to this email and thanked Benvegnu for his help.

¶6   In August 2010, the Myerses provided Benvegnu with another update on their recovery and indicated that they would like to discuss settlement soon. The Myerses asked Benvegnu at that time, "It shouldn't be an issue but what was the date we need to be before?" Benvegnu responded, "You . . . have until 12/31/10 to settle or file suit to preserve the statute," and he offered to extend this deadline if necessary.[1] In October, the Myerses again asked about the deadline and inquired whether UTA needed "to be provided any statutory legal notice prior to the 12/31/2010 deadline should we not be able to settle." Benvegnu did not directly answer the Myerses' question about notice but instead gave the Myerses "written confirmation" that "UTA agrees to extend the statutory time to settle the claims [the Myerses] made against UTA from the accident of 10/31/[2]009," subject to UTA's right to revoke the open-ended extension upon thirty-days notice.

¶7   In November 2010, settlement negotiations between UTA and the Myerses broke down, and the Myerses retained an attorney to further pursue their claim. Upon receiving notice that the Myerses were represented, Benvegnu notified the Myerses' counsel on December 1, 2010, that it was "rescind[ing] the extension of statutory time . . . to settle the claims [the Myerses] made against UTA from the accident of 10/31/[2]009." On December 3, 2010, the

---

1. As discussed below, both the December 3 and December 31 dates Benvegnu gave to the Myerses are incorrect under the Act. *Infra* ¶ 14. Rather, the Myerses needed to file a lawsuit no later than January 31, 2011. *Infra* ¶ 14.

Myerses' counsel filed a second notice of claim against UTA based on the accident. The Myerses filed and served their complaint against UTA in October 2011.

¶8      UTA moved to dismiss the Myerses' complaint as untimely under the Act. In response, the Myerses argued that their first notice of claim, filed on December 1, 2009, was legally insufficient to serve as a notice of claim; that the statute of limitations should run from their December 3, 2010 notice of claim; and that UTA should be estopped from asserting the Myerses' noncompliance with the Act as a defense. The Myerses' opposition was supported by an affidavit from Ryan Myers, in which he averred that he believed the December 1, 2009 notice of claim related only to property damage from the collision and that "[a]t no time during any of my written or verbal communications with [Benvegnu] did he inform me that a Notice of Claim had already been filed by me or that the [December 1, 2009 notice of claim] had anything whatsoever to do with my or my wife's personal injuries."

¶9      The district court rejected the Myerses' contention that their initial notice of claim was invalid but determined that UTA was estopped from asserting governmental immunity as a defense because "UTA had misled the Myers[es] by failing to clarify whether or not they had filed a notice of claim, and by giving multiple incorrect deadlines for filing suit." At this time, the district court was unaware of Benvegnu's February 26, 2010 email to the Myerses in which Benvegnu explained that UTA had received their notice of claim on December 2, 2009.

¶10     UTA petitioned for interlocutory review of the district court's order, and this court granted the petition. However, UTA then moved the district court to reconsider its prior order, submitting Benvegnu's February 26, 2010 email as newly discovered evidence. UTA also requested and received a stay of its interlocutory appeal pending resolution of the motion to reconsider. The district court granted UTA's motion to reconsider on November 26, 2012, concluding that "in light of the February 26,

2010 e-mail, it is clear that UTA did inform the Myers[es] that they had filed a Notice of Claim, and gave them the [relevant statute] so they could calculate the deadline to file suit." The court also revisited its determination regarding the incorrect calculation of deadlines, ruling that the erroneous deadlines did not affect the Myerses' ability to comply with the Act, because the stated deadlines were earlier than the correct deadline for filing suit. In light of the district court's grant of its motion to reconsider, UTA requested voluntary dismissal of its interlocutory appeal, which this court granted on December 10, 2012. A final appealable order dismissing the Myerses' complaint was entered on May 17, 2013, and the Myerses appeal from that order.

ISSUES AND STANDARDS OF REVIEW

¶11     The Myerses first argue that the district court lacked jurisdiction to grant UTA's motion to reconsider its ruling on UTA's motion to dismiss while an interlocutory appeal of that order was pending. Whether the district court had jurisdiction is a question of law. *State v. Norris*, 2007 UT 6, ¶ 10, 152 P.3d 293. Because the Myerses challenge the district court's jurisdiction for the first time on appeal, there is no lower court decision for our review and we decide the issue in the first instance as a matter of law.

¶12     The Myerses next argue that UTA was contractually obligated to allow them additional time to file a new notice of claim from which the Act's limitations period should run. However, "[w]e generally will not consider an issue unless it has been preserved for appeal." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828.

¶13     Last, the Myerses argue that the district court erred in rejecting their argument that UTA was estopped from asserting governmental immunity as a defense. "The issue of whether equitable estoppel has been proven is a classic mixed question of

fact and law." *Department of Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997). However, because the district court ruled on the Myerses' estoppel claim in granting UTA's motion to dismiss under rule 12(b)(1) of the Utah Rules of Civil Procedure, we review the district court's decision for correctness. *See Peterson v. Delta Air Lines, Inc.*, 2002 UT App 56, ¶ 7, 42 P.3d 1253.[2]

ANALYSIS

¶14 On appeal, the Myerses do not challenge the district court's determination that their December 1, 2009 notice of claim was valid. Accordingly, the Myerses' time to file suit under the statute runs from the denial of that claim by UTA. Because UTA did not affirmatively deny the Myerses' claim, it was deemed denied on January 30, 2010. *See* Utah Code Ann. § 63G-7-403 (LexisNexis 2008). The Act therefore required the Myerses to file suit no later than January 31, 2011, and their October 29, 2011 complaint was

---

2. In ruling on UTA's motion to dismiss, the district court relied on affidavits and exhibits submitted by the parties. However, unlike a motion under rule 12(b)(6) of the Utah Rules of Civil Procedure, a motion to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1) is not converted to a motion for summary judgment if the court considers evidence outside the pleadings. *Spoons v. Lewis*, 1999 UT 82, ¶¶ 4–5, 987 P.2d 36. Nonetheless, the district court may appropriately consider materials outside the pleadings in considering a motion to dismiss for lack of subject-matter jurisdiction. *See Coombs v. Juice Works Dev., Inc.*, 2003 UT App 388, ¶ 7, 81 P.3d 769. In reviewing the district court's ruling on such a motion, we consider the "facts alleged in the complaint, 'supplemented where appropriate by the materials obtained through discovery.'" *Id.* ¶ 8 (quoting *Salt Lake Tribune Publ'g Co. v. Memmott*, 2001 UT 83, ¶ 4, 40 P.3d 575).

untimely.[3] *See id.* The question before us then is whether the district court erred in rejecting the Myerses' argument that UTA was estopped from asserting governmental immunity as a defense. Because the Myerses also challenge the district court's jurisdiction to grant UTA's motion to reconsider, we address that argument first.

## I. The District Court Had Jurisdiction to Grant UTA's Motion to Reconsider.

¶15　　The Myerses argue that the district court lacked jurisdiction to reconsider its order on UTA's motion to dismiss while that order was pending on interlocutory appeal. "Generally, when a party files a timely notice of appeal, the court that issued the judgment loses jurisdiction over the matters on appeal." *Saunders v. Sharp*, 818 P.2d 574, 577 (Utah Ct. App. 1991); *see also State v. Bisner*, 2001 UT 99, ¶ 39, 37 P.3d 1073 (observing that a trial court is divested of jurisdiction to reconsider an order by the defendant's filing a notice of appeal from the final judgment). The Myerses assert that an interlocutory appeal similarly deprives the district court of jurisdiction over the order appealed from and that the district court therefore lacked jurisdiction to grant UTA's motion to reconsider while the interlocutory appeal was pending.

¶16　　We need not determine whether interlocutory review of an order deprives the district court of jurisdiction to reconsider that order, because the order granting UTA's motion to reconsider, which the district court entered during the pendency of the interlocutory appeal, is not before us. Shortly after the district court entered its November 26, 2012 order granting UTA's motion to

---

3. UTA rescinded its open-ended extension effective December 31, 2010—thirty days after giving notice to the Myerses on December 1, 2010. Because it was rescinded before the expiration of the statutory deadline, the extension does not affect our calculation of the Myerses' deadline for filing.

reconsider and dismissing the Myerses' claims, UTA requested a voluntary dismissal of its interlocutory appeal, which this court granted on December 10, 2012. The Myerses filed a notice of appeal from the November 26, 2012 order. However, we notified the parties that the November 26, 2012 order did not appear to be a final appealable order under rule 7(f)(2) of the Utah Rules of Civil Procedure. The district court entered a final appealable order granting UTA's motion for reconsideration and dismissing the complaint on May 17, 2013.

¶17   This court lacks jurisdiction to hear appeals from nonfinal orders. *DFI Props. LLC v. GR 2 Enters. LLC*, 2010 UT 61, ¶ 16, 242 P.3d 781. Thus, only the district court's May 17, 2013 order is properly before us on appeal. Because UTA's interlocutory appeal was dismissed on December 10, 2012, we readily conclude that the district court had jurisdiction on May 17, 2013, to enter its final appealable order granting UTA's motion to reconsider and dismissing the Myerses' complaint.

## II. The Myerses' Contract Argument Is Unpreserved.

¶18   The Myerses next argue that UTA "contractually modified" the requirements of the Act and therefore had a contractual obligation to allow the Myerses additional time to file a notice of claim and, presumably, restart the statutory limitations period. "We generally will not consider an issue unless it has been preserved for appeal." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828. To preserve an issue for appeal, a party must specifically raise the issue "in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted). The Myerses concede that "the particular word 'contract' did not appear in briefs or oral argument" before the district court. Our review of the record confirms that in their arguments below, the Myerses never asserted that UTA breached a contractual obligation or was in some way contractually prohibited from moving for dismissal of the Myerses' claims. The district court's order makes

no mention of a contract-based claim but analyzes only the Myerses' estoppel claim. And the Myerses did not assert below that the district court had failed to rule on one of their claims.

¶19     We conclude that the Myerses failed to specifically raise this issue before the district court in such a way that it had an opportunity to rule on it. Their argument that UTA was contractually bound to honor a different procedure or deadline than that imposed by the Act is therefore unpreserved.[4]

### III. The District Court Did Not Err in Rejecting the Myerses' Estoppel Argument.

¶20     Last, the Myerses argue that the district court should have declined to reconsider its decision that UTA was estopped from asserting immunity under the Act as a defense.

> Equitable estoppel requires (1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted, (2) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement,

---

4. We note that unlike other statutory frameworks that govern actions involving governmental entities, such as the Administrative Procedures Act and Government Records Access and Management Act, the Governmental Immunity Act has no express provision authorizing the parties to modify the statutory deadlines by agreement. *See Monarrez v. Utah Dep't of Transp.*, 2014 UT App 219, ¶ 26, 335 P.3d 913. Rather, "Utah courts have 'consistently and uniformly held' that strict compliance with the [Governmental Immunity Act] is required." *Id.* ¶ 27 (quoting *Wheeler v. McPherson*, 2002 UT 16, ¶ 11, 40 P.3d 632). However, because the issue is not properly before us, we need not decide whether the Governmental Immunity Act nevertheless permits parties to vary its terms by agreement.

> admission, act or failure to act, and (3) an injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Meadow Valley Contractors, Inc. v. Utah Dep't of Transp.*, 2011 UT 35, ¶ 45, 266 P.3d 671 (citation and internal quotation marks omitted). To assert estoppel against a governmental entity, a claimant must generally show that the entity made "'very clear, well-substantiated representations.'" *McLeod v. Retirement Bd.*, 2011 UT App 190, ¶ 22, 257 P.3d 1090 (quoting *Anderson v. Public Serv. Comm'n*, 839 P.2d 822, 828 (Utah 1992)). Thus, "our supreme court has observed that '[t]he few cases in which Utah courts have permitted estoppel against the government have involved very specific written representations by authorized government entities.'" *Id.* (alteration in original) (quoting *Anderson*, 839 P.2d at 827).

¶21   The Myerses argue that by moving to dismiss their claim, UTA has taken a position inconsistent with its prior representations because it "made statements that led Mr. Myers to believe that his concerns about missing a deadline were 'alleviated' and that his claims would be 'preserved.'" The Myerses assert that UTA made representations that are inconsistent with its position that the Myerses' injury claims are not "preserved" because they are untimely.

¶22   The specific representations that the Myerses claim support their estoppel argument are contained in Benvegnu's email correspondence with the Myerses. In response to the Myerses' initial inquiry about their deadline to settle the case, Benvegnu explained to them, "UTA received you[r] Notice of Claim on 12/2/09, so you would have until 12/3/10 to settle or file a lawsuit to maintain your claim." When the Mserses again inquired about the deadline, Benvegnu explained that they had "until 12/31/10 to settle or file suit to preserve the statute" but that UTA would grant an extension if they needed "additional time beyond 12/31/10."

Finally, Benvegnu sent the Myerses "written confirmation . . . that UTA agree[d] to extend the statutory time to settle the claims . . . against UTA," in order to "alleviate [the Myerses'] concerns about the statutory time limit to settle [their] claims."[5]

¶23    The central thrust of the Myerses' argument is that they believed that UTA had granted them additional time to file a second notice of claim and, presumably, that the limitations period on their claim would run from the filing of that new notice. However, we see no basis in the statements identified by the Myerses or elsewhere in the record to conclude that UTA represented to the Myerses that it was offering any extension of time to file another notice of claim. Every communication from Benvegnu to the Myerses was in relation to their time to settle their claim or file their lawsuit. And Benvegnu's statement to the Myerses that UTA was already in receipt of their notice of claim—accompanied by the text of the statute setting forth the deadline to file suit after filing a notice of claim—renders their reading of Benvegnu's communications implausible. Thus, when read in the context of the parties' communications, we can only conclude that UTA granted the Myerses an extension of time to

---

5. The Myerses also point out that the December 3 and December 31 deadlines given them by Benvegnu were incorrect. *See supra* ¶ 14. However, they do not assert that the erroneous deadlines are statements inconsistent with UTA's position that the Myerses' claim was not timely filed or that the statements otherwise satisfy one of the elements of the Myerses' estoppel argument. Nevertheless, we note that had the Myerses complied with the erroneous deadlines given by Benvegnu, their complaint would have been filed well before the end of the limitations period and they would not have been harmed by reliance on these erroneous representations. *See Meadow Valley Contractors, Inc. v. Utah Dep't of Transp.*, 2011 UT 35, ¶ 45, 266 P.3d 671.

"settle or file suit"[6]—that is, an extension to the statutory deadline to "begin the action" pursuant to Utah Code section 63G-7-403, not an extension of time to file another notice of claim under Utah Code section 63G-7-402.

¶24    Because UTA never made a clear, specific representation to the Myerses that it had given them an opportunity to file a new notice of claim and restart their time to file suit, or made any other representation inconsistent with its assertion of governmental immunity, the Myerses' estoppel claim must fail. *See McLeod*, 2011 UT App 190, ¶ 22. Accordingly, we need not consider whether the Myerses reasonably relied on UTA's representation or were injured by any reliance. *Id.* Because the district court correctly concluded that UTA was not estopped from asserting immunity under the Act as a defense to the Myerses' claims, we affirm the district court's dismissal of the Myerses' complaint.


CONCLUSION

¶25    The district court had jurisdiction to grant UTA's motion to reconsider because UTA's interlocutory appeal had been dismissed at the time the district court entered a final appealable order granting the motion. The Myerses failed to preserve their argument that UTA contractually modified the requirements of the Act. UTA did not make representations to the Myerses that were inconsistent with its assertion of governmental immunity. We therefore affirm the district court's dismissal of the Myerses' complaint.

---

6. As noted above, that extension was rescinded in writing in December 2010, a month before the expiration of the statutory deadline, and therefore does not affect our determination that the Myerses' complaint was not timely filed. *Supra* note 3.